UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 3:20-CR-86-TJC-JBT

JORGE PEREZ, *et al*
_____

## MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE 29 OF CRIMINAL PROCEDURE

Defendant James F. Porter, Jr. ("Porter"), by and through counsel, hereby files this Motion for Judgment of Acquittal, pursuant to Rule 29(b), Fed. R. Crim. P., and as grounds therefore, state the following:

## STATEMENT OF FACTS

1. Porter was charged on June 17, 2020, in a multicount Indictment with Conspiracy to Commit Healthcare Fraud (Count 1), Conspiracy to Commit Money Laundering (Count 8), and Money Laundering (Counts 11-22).

2. The Indictment alleged Porter and the Co-defendant's had conspired to commit healthcare fraud by making false or misleading statement(s) or by omitting material information from the billing regarding who, the labs or the hospitals, actually performed the urine testing.

3. Porter's, along with the Co-defendants, jury trial began on May 9 , 2022.

4. During the trial the Government failed to produce any evidence of a federal law, contract or relevant provider manual prohibiting either a reference or outreach lab arrangement.

5. The Government called numerous witnesses from the alleged victim commercial insurance companies. These witnesses testified the company they worked for would not have paid the claims had they known an outside lab had actually done the testing for the hospital (pass through billing), but none of the witnesses provided any testimony on what statute, rule or section of their provider manual they based their opinion upon. Multiple witnesses of the commercial insurance companies were cross examined with their own companies internal emails

dated from the time period while the billing in question was being submitted. The emails stated nothing in the law or their contracts/provider manuals put the Defendants on notice pass through billing was not allowed. None of the insurance witnesses alleged Porter made any misrepresentations to them, or gave any testimony alleging Porter caused someone else to make a misrepresentation. In fact, no testimony was given even alleging Porter had any knowledge of how, or by whom the billing was being submitted.

6.      The Government called multiple expert witnesses to testify during the trial. Dr. Peter Kongstvedt testified about his opinion of the relevant industry standards in the medical billing field. However, Dr. Kongstvedt acknowledged that experts could disagree on the relevant matters. On cross examination, Dr. Kongstvedt was forced to acknowledge the provider manual he relied upon in forming his opinion only applied to Colorado, none of the conduct in this case took place in Colorado, and his expert report and trial testimony contained no citations supporting his opinion.

7.      Many of the lay witnesses called to testify by either the Government or a defendant testified Porter's laboratory, Pinnacle Labs, performed tests on urine samples as contractually obligated by the contracts between Pinnacle Labs and the hospitals. None of these lay witnesses testified Porter made any misrepresentations or caused any misrepresentations to be made in the billing.

8.      One of the lay witnesses called to testify by the Government was Gale Pickens, CEO of Putnam County Memorial Hospital (hereinafter, PCMH). On cross exam Ms. Pickens testified PCMH was still using Quest as its "reference lab" in the same way Pinnacle had previously functioned as a reference laboratory handling testing PCMH's lab could not. PCMH is still sending urine samples to Quest to be tested. Quest then returns the test results to the ordering doctor, and invoices PCMH. In turn, PCMH bills the commercial insurer as though it had done the testing, receives payment from the commercial insurer, and pays Quest's invoice. This is the same billing arrangement PCMH had with Porter, which the Government claims to be is fraudulent.

9. At the close of the evidence, the jury was unable to reach a unanimous verdict on approximately 80% of the counts in the Indictment. The Jury failing to reach a verdict in such a large portion to the counts shows the evidence presented by the Government was woefully insufficient to prove Porter's guilt beyond a reasonable doubt as required.

## MEMORANDUM OF LAW

"If the jury has failed to return a verdict, the court may enter a judgment of acquittal." Fed. R. Crim. P. 29(c)(2). When considering a Rule 29 motion for acquittal, the Court must "view the evidence in the light most favorable to the government." *United States v. Sellers*, 871 F.2d 1019, 1020 (11th Cir. 1989) (citing *Glasser v. United States*, 315 U.S. 60 (1942)). The Court is required to "resolve any conflicts in the evidence in favor of the Government" and "accept all reasonable inferences that tend to support the government's case." *United States v. Ward*, 197 F.3d 1076 (11th Cir. 1999) (citing *United States v. Taylor*, 972 F.2d 1247, 1250 (11th Cir. 1992). The government needed not "exclude every reasonable hypothesis of innocence," *Sellers*, 871 F.2d at 1021, but where "evidence is equally consistent with each of several hypotheses, the law considers it proof of any one of them. And if any one of them supports a finding of innocence, the law affords a defendant the benefit of innocence." *United States v. Brantley*, No. 8:10-CR-298-T-30MAP, 2013 U.S. Dist. Lexis 16058 at 16 (M.D. Fla. Feb. 6, 2013) (citing *Neal v. United States*, 102 F.2d 642, 648 (8th Cir. 1939)("when all of the substantial evidence is as consistent with innocence as it is with guilt, it is the duty of the appellate court to reverse a conviction.").

## CONSPIRACY TO COMMIT HEALTHCARE FRAUD

A conviction for conspiracy to commit health care fraud in violation of 18 U.S.C. §1349 requires proof beyond a reasonable doubt "(1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013). "The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). While the nature of a conspiracy often relies on circumstantial

evidence to prove an agreement, the Government must prove more than mere association with another. *United States v. Newton,* 44 F.3d 913, 921 (11th Cir. 1994) (citing *United States v. Kelly*, 749 F.2d 1541 (11th Cir. 1985). When the Government only relies on circumstantial evidence, "reasonable inferences not mere speculation, must support the conviction." *United States v. Clay,* 832 F.3d 1259, 1293 (11th Cir. 2016).* In *United States v. Willner*, 795 F.3d 1297 (11th Cir. 2015) the Eleventh Circuit vacated a doctor's healthcare fraud related convictions where the Government relied entirely upon circumstantial evidence to infer guilt. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *See Willner at 1307.* "Because the Government is permitted broad prosecutorial discretion to prove the conspiracy, the likelihood exists that those who associate with conspirators will be found guilty of a crime that they have not intended to commit, and part of a group that they never joined." *United States v. Chandler*, 388 F.3d 796, 798 (11th Cir. 2004). Courts are charged to take great care to ensure the Government does not permit a jury to sweep innocent people into the conspiratorial net. *Id.* at 806.

The total sum of the evidence presented by the Government against Porter was assumptions, uncited opinions of industry standards, and contracts interpreted by nonlawyers. Absolutely no evidence was presented to show Porter's conduct was anything more than a legitimate business arrangement. The Government simply failed to present any evidence Porter was on notice he was willingly joining a conspiracy to commit healthcare fraud, as opposed to a legitimate business venture. No evidence was presented to show any of the co-defendants had notice prior to the billing being submitted as pass through billing was not allowed by Federal law, industry standards, or the commercial insurers contracts/provider manuals. Furthermore, "the defendant must be shown to have known the claims submitted were, in fact, false." *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007). Once again, the Government failed to present any evidence any of the information contained in the billing was either submitted by Porter, false, or that any material omission occurred. In fact, each of the commercial insurance company witnesses testified there was only a small amount of information on the billing form

4

they actually relied upon. An omission cannot be the basis of fraud unless the information is material. The commercial insurers own witnesses testified they did not even consider the fields for type of patient and patient ID #.

Finally, the Government argued to the jury the billing being submitted to the commercial insurance companies with the hospitals National Provider Identification Number (hereinafter, NPI#), was fraud. However, the Government failed to explain how that was. For example, Jorge Perez had a contract to manage Campbellton-Graceville Hospital. That management agreement allowed his use of the hospitals NPI#. Aaron Durall owned Chestatee Hospital. How could it be illegal for Durall to use the NPI# of a hospital he owned? Finally, Porter through Pinnacle Labs, had a contract with PCMH which required PCMH to do the billing for all urine testing. Once PCMH executed the contract, it gave permission for its NPI# to be used in the billing of the urine testing, and therefore it cannot now be fraud.

## MONEY LAUNDERING

One of the essential elements of money laundering is the money be proceeds of criminal activity. In this case the only criminal activity alleged by the Government was the Conspiracy to Commit Healthcare Fraud and substantive healthcare fraud counts. Porter was not even charged with a substantive healthcare fraud count, so those counts cannot form the basis of his knowledge of the money being the proceeds of illegal activity. The Government did not prove Porter willfully joined the alleged Conspiracy to Commit Healthcare Fraud, as the jury failed to convict Porter on the Conspiracy to Commit Healthcare Fraud, but did in fact convict other co-defendants. The evidence presented at trial, at best, showed Porter ran a toxicology lab that did business with the hospitals. Simply being involved in an arms length business transaction with someone does not create a Conspiracy to Commit Healthcare Fraud. Therefore, a judgment of acquittal on the money laundering counts should also be granted. *United States v. Lander*, 668 F.3d 1289, 1297 (11th Cir. 2012)(reversing money laundering conviction when conviction of the predicate offense was reversed); *Medina*, 485 F.3d 1291 (reversing money laundering conviction when proof of the underlying specified unlawful act failed).

5

In addition, the Government presented <u>no evidence</u> at trial the bank the two (2) checks were deposited into was an FDIC insured bank, the two (2) transactions had any effect on interstate commerce, or the funds were transferred through interstate wire or other means. The only testimony put forth by the Government on this issue was by Kimberly Henderson, the FBI forensic accountant. Ms. Henderson testified that there was no evidence of the checks being mailed, and were probably handed from one brother to the other. Ms. Henderson also failed to submit any evidence the transactions had any effect on interstate commerce in any manner. As such, the Government failed to meet its burden to show the transfers alleged in the Indictment were in violation of Federal law by failing to show either transaction had any effect on interstate commerce or the Defendant had knowledge the funds at issue were the proceeds of illegal activity.

## **CONCLUSION**

Based upon the above, Porter requests this Honorable Court enter an order granting this Motion for judgment of acquittal on all counts as the evidence is clear the Government failed to introduce sufficient evidence to prove every essential element of the charged offenses beyond and to the exclusion of a reasonable doubt.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** on July 27, 2022, a true and correct copy of the foregoing motion was filed with the Clerk of Court by using CM/ECF system, which will send notice of the electronic filing to all counsel of record in this matter.

**THE SCHWARTZ LAW GROUP, P.A.**

*/s/ Seth Schwartz*

_____
Seth Schwartz, Esquire
Florida Bar No.: 739421
Albert J. Tasker IV, Esquire
Florida Bar No.: 743321
Jesse B. Berryman, IV, Esquire
Florida Bar No.: 98871
10365 Hood Road, Suite 104
Jacksonville, FL 32257
(904) 292-0222
(904) 292-0044 fax
Service Email: service@flattorney.net
Attorneys for the Defendant