UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FILED IN OPEN COURT**

1-5-23

CLERK, U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
**JACKSONVILLE, FLORIDA**

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:20-cr-86(S1)-TJC-JBT

JAMES PORTER, JR.

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by
Roger B. Handberg, United States Attorney for the Middle District of Florida,
the United States Department of Justice, Criminal Division, Fraud Section
("Fraud Secton") (hereinafter collectively "government" or the "United
States"), and the defendant, JAMES PORTER, JR., and the attorney for the
defendant, Seth Schwartz, mutually agree as follows:

**A.    Particularized Terms**

1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the
Superseding Indictment (the Health Care Fraud Object of the charged
Conspiracy). Count One charges the defendant with Conspiracy to Commit
Health Care Fraud, in violation of Title 18, United States Code, Section 1349.

Defendant's Initials 

AF MT

2. <u>Maximum Penalties</u>

Count One carries a maximum sentence of 10 years of imprisonment, a fine of $250,000 or the greater of twice the gross gain or twice the gross loss, a term of supervised release of up to 3 years, and a special assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First:</u>    Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, in violation of 18 U.S.C. § 1347; and

<u>Second:</u>    The Defendant knew the unlawful purpose of the plan and willfully joined in it.

4. <u>Count(s) Dismissed</u>

At the time of sentencing, the remaining counts against the Defendant, Counts One (Wire Fraud Object of the Conspiracy only), Two, Three, Four,

Defendant's Initials                     2

Five, Six, Eight, and Eleven through Twenty-Two will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and the Fraud Section agree not to charge the defendant with committing any other federal criminal offenses known to the United States at the time of the execution of this agreement.

6. <u>Chapter Two Base Offense Level Stipulation</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two base offense level be calculated at 6 pursuant to USSG § 2B1.1(a)(2). The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. <u>Chapter Two and Three Calculations – Stipulation</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two and Three guidelines scoring is as follows:

Loss - 2B1.1(b)(1)(M):                    + 24 level increase

Defendant's Initials                     3

Sophisticated means - 2B1.1(b)(10):     +  2 level increase

<u>Acceptance of Responsibility - 3E1.1</u>:  <u>- 2 level decrease</u>

Total Offense Level (TOL):               30

The parties understand that such an estimate is not binding on the Court, and if the Court calculates the loss differently, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. <u>Acceptance of Responsibility - Two Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9. <u>Cooperation - Substantial Assistance to be Considered</u>

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the

Defendant's Initials _____        4

charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States, and the defendant agrees that defendant cannot and will not

Defendant's Initials _____                    5

challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Use of Information - Section 1B1.8

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of the defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

11. Cooperation - Responsibilities of Parties

a.      The government will make known to the Court and other relevant authorities the nature and extent of the defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose

Defendant's Initials _____                    6

and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by rescission of any order dismissing them or, alternatively, does hereby waive, in open court,

Defendant's Initials _____              7

prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which the defendant hereby agrees to plead in the instant case but, in that event, the defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

United States, the United States may move the Court to declare this entire plea agreement null and void.

12. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, an order of forfeiture of at least $59,915,841.72 in proceeds the defendant admits he obtained, as the result of the commission of the offense to which the defendant is pleading guilty, as well as approximately $1,067,345.70 in lieu of real property located at 4123 Little Point, Avon, Colorado 81620, which were purchased or funded with proceeds of the offense to which the defendant is to plead guilty.

The net proceeds from the forfeiture and sale of any specific asset will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained at least $59,915,841.72 as a result of the commission of the offense and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered

Defendant's Initials           9

by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The Defendant expressly consents to the forfeiture the following substitute assets: (1) a 2016 24' Malibu M235 vessel, HIN: MB2V9179E616,

Defendant's Initials _____            10

registered to James Frederick Porter, Jr., and (2) a 2017 23' 5" Malibu M235 vessel, HIN: MB2V4052E717, registered to James Frederick Porter, Jr. or Karol Renee Porter. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time

Defendant's Initials _____                    11

it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the

Defendant's Initials _____            12

defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials           13

**B.**     **Standard Terms and Conditions**

   1. <u>Restitution, Special Assessment and Fine</u>

      The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant specifically agrees that he is jointly and severally liable to make restitution to all victims of the offense, including but not limited to, the following entities in the following approximate amounts:

| | |
|---|---|
| RIGHT Choice Managed Care, Inc. | $89,531,893 |
| United HealthCare | $21,072,216 |
| Aetna, Inc. | $4,113,207 |
| Home State Health Plan, Inc. | $68,123 |

The defendant agrees that he is also jointly and severally liable to make restitution to such additional victims as may be identified in the future.

Defendant's Initials _____          14

The defendant agrees to make his best efforts to make restitution to the victims as expeditiously as possible. To that end, the defendant agrees to work with government counsel to liquidate assets so that, at or before sentencing, he can make a significant payment towards his restitution obligation. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release

Defendant's Initials _____          15

from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen will be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which the defendant pleads, to respond to comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

Defendant's Initials                     16

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office and the Fraud Section to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office and the Fraud Section to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _____          17

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw the defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _____ 18

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal the defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from the waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Scope of Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida, the Office of the United States Attorney for the Western District of Missouri, and the Fraud Section, and cannot bind other federal, state, or local prosecuting authorities,

although the undersigned will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court in open court, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the defendant's complete satisfaction with the representation and advice received from the defendant's undersigned counsel (if any).  The defendant also understands that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury with the assistance of counsel,

Defendant's Initials _____   20

the right to confront and cross-examine the witnesses against the defendant,
the right against compulsory self-incrimination, and the right to compulsory
process for the attendance of witnesses to testify in the defendant's defense;
but, by pleading guilty, the defendant waives or gives up those rights and there
will be no trial.  The defendant further understands that if the defendant pleads
guilty, the Court may ask the defendant questions about the offense or offenses
to which the defendant pleaded, and if the defendant answers those questions
under oath, on the record, and in the presence of counsel (if any), the
defendant's answers may later be used against the defendant in a prosecution
for perjury or false statement.  The defendant also understands that the
defendant will be adjudicated guilty of the offenses to which the defendant has
pleaded and, if any of such offenses are felonies, may thereby be deprived of
certain rights, such as the right to vote, to hold public office, to serve on a jury,
or to have possession of firearms.

11. Factual Basis

The defendant is pleading guilty because the defendant is in fact guilty.
The defendant certifies that the defendant does hereby admit that the facts set
forth in the attached "Factual Basis," which is incorporated herein by
reference, are true, and were this case to go to trial, the United States would be
able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____            21

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _5th_ day of ~~December 2022~~ January 2023

ROGER B. HANDBERG
United States Attorney

James Porter, Jr.
Defendant

Tysen Duva
Assistant United States Attorney

Seth Schwartz
Schwartz Law Group, P.A.
Attorney for Defendant

Frank M. Talbot, II
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials _____                    22

GLENN S. LEON, Chief
Criminal Division
Fraud Section

_A. Tyl Dm for_

James V. Hayes
Senior Litigation Counsel
Gary A. Winters
Trial Attorney
Fraud Section

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO 3:20-cr-86(S1)-TJC-JBT

JAMES PORTER, JR.

PERSONALIZATION OF ELEMENTS

1. Between in or about May 2015 and in or about February 2018, did
   you and at least one other person try to accomplish a common and
   unlawful plan to violate 18 U.S.C. § 1347, that is, to execute a
   scheme or artifice to defraud a health care benefit program, or to
   obtain money or property owned by, or under the custody or control
   of, a health care benefit program by using materially false or
   fraudulent pretenses, representations, or promises?

2. Did you know the unlawful plan's purpose and willfully join in it?

Defendant's Initials _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                       CASE NO 3:20-cr-86(S1)-TJC-JBT

JAMES PORTER, JR.

FACTUAL BASIS[1]

**Overview of the Scheme**

Beginning in or about May 2015, co-conspirators worked together to
acquire or assume control over small rural hospitals in multiple states, some of
which were designated as Critical Access Hospitals ("CAH"), for the purpose
of using the hospitals' National Provider Identification number ("NPI") and
Tax ID number ("TIN") to bill urine drug and other laboratory tests ("Lab
Tests") to private insurance companies to take advantage of the hospitals'
contracts with favorable reimbursement rates. Under these contracts (which
rendered the hospitals "in-network" with insurers), the insurers agreed to pay
only for services the hospitals provided to insureds. Co-conspirators JORGE
PEREZ and his brother RICARDO PEREZ, through Empower H.I.S.

---

[1] The Factual Basis is prepared by the United States. The factual basis does not include all
pertinent or known facts concerning the charge and guilty plea, or all facts that the defendant
has knowledge of. The factual basis is merely a set of facts designed to set forth sufficient
information that the Court uses to determine if there is indeed a factual basis to accept the
defendant's guilty plea.

Defendant's Initials 

("Empower"), a Miami-based billing company they owned and operated, submitted claims for the Lab Tests through the hospitals as if the testing had been performed there, when in fact the overwhelming majority were performed at independent laboratories, including laboratories owned by co-conspirators JAMES PORTER, JR. (RAJ Enterprises, d/b/a Pinnacle Labs), CHRISTIAN FLETCHER (LifeBrite Labs), and AARON DURALL (Reliance Labs) that lacked contracts with insurers (*i.e.*, laboratories that were "out of network"). Furthermore, patients providing the samples had no connection with the hospitals. Had the co-conspirators identified the out of network independent laboratories as the true provider of the Lab Tests, the insurance companies would have paid lower rates, or nothing at all, for such claims.

The claims submitted under the hospitals' billing credentials were false in that (a) they falsely represented that the testing had some connection to the hospital when it did not, (b) omitted any mention of the independent labs as the provider of the service, and (c) many of the claims were for medically unnecessary testing.

### The Development of the Scheme

The scheme started in 2015 when JORGE PEREZ and SETH GUTERMAN obtained control over Campbellton-Graceville Hospital



Defendant's Initials                    2

("CGH"), a 25-bed CAH in Graceville, Florida. JORGE PEREZ, RICARDO PEREZ, DURALL, FLETCHER, and others arranged for numerous independent labs, including Reliance and Lifebrite, to conduct Lab Tests on non-patient specimens solicited by a network of recruiters. The conspirators used Empower to bill the claims to private insurers through CGH, the overwhelming majority of which were for more complex confirmatory urine drug testing which CGH could not and did not perform.

In or around February 2016, JORGE PEREZ obtained operational control over Regional General Hospital of Williston ("RGH"), located in Williston, Florida. The conspirators billed insurers through RGH for Lab Tests (predominantly confirmatory urine drug tests) performed at Reliance, LifeBrite, and other out-of-network laboratories.

In or around June 2016, JORGE PEREZ lost control of CGH. At about that time, Florida Blue and other insurers began an investigation of claims arising out of CGH, which resulted in the conspirators ceasing their use of CGH to bill insurers. At that point, JORGE PEREZ and other co-conspirators sought out small rural hospitals in other states with favorable in-network insurance contracts.

### Putnam County Memorial Hospital

Putnam County Memorial Hospital ("Putnam") was a rural CAH

Defendant's Initials                     3

located in Unionville, Missouri.

### Putnam's Insurance Agreements

RightCHOICE Managed Care, Inc. (a Missouri-headquartered licensee of the Blue Cross and Blue Shield Association) ("RightCHOICE"), United HealthCare, Inc. ("UHC"), and Aetna Inc. ("Aetna") (collectively, the "Private Insurers"), were insurance companies that offered a variety of individual and group health benefit plans. Persons covered under these plans were referred to as "Members."

Prior to September 2016, Putnam entered into contracts with the Private Insurers and other health insurers under which the insurers agreed to reimburse Putnam for certain claims submitted by the hospital for healthcare services performed on behalf of Members, including laboratory testing services. Under these contracts, Putnam was an "in-network" provider with the Private Insurers. In general, "in-network" status meant that the insurers reimbursed Putnam for its services at higher rates than the insurers would reimburse "out-of-network" providers for comparable services. Putnam's contracts with the Private Insurers also provided that reimbursement would be made only for medically necessary services, which was specifically defined in each contract.

Defendant's Initials _____          4

## The Conspirators' Control Over Putnam

In September 2016, David Byrns ("BYRNS") and JORGE PEREZ,
acting through Hospital Partners, Inc. ("Hospital Partners"), a Florida
corporation they owned, obtained control of Putnam through a management
agreement with Putnam's Board of Trustees. The agreement provided, among
other things, that Hospital Partners had the sole and exclusive right to
supervise, manage, and operate Putnam.

In October 2016, Putnam entered into an agreement (the "Independent
Contractor Agreement") with Hospital Laboratory Partners ("HLP"), a
company incorporated in Florida whose manager was JAMES PORTER, JR.,
under which, among other things, HLP purportedly would operate and
manage a clinical laboratory at Putnam, Putnam would establish a dedicated
bank account (the "Putnam Account") to receive reimbursements for lab
claims, and HLP would be entitled to 80% of the monies deposited in the
Putnam Account. In truth and in fact, HLP did not manage a clinical
laboratory at Putnam, but was a vehicle for distributing reimbursements from
the Private Insurers and other payors for Lab Tests performed at independent
laboratories and billed through Putnam. In addition to serving as the manager
of HLP, JAMES PORTER, JR. owned and controlled Pinnacle Labs, a
clinical testing laboratory in Ocala, Florida that was out-of-network with the

Private Insurers.

**<u>Urine Drug and Other Laboratory Testing</u>**

As soon as BYRNS and JORGE PEREZ obtained control over Putnam, they, together with JAMES PORTER, JR. and others, began arranging for Lab Tests to be performed at Pinnacle and LifeBrite, and other outside, out-of-network laboratories, and billed through Putnam to the Private Insurers. In order to ensure a steady flow of samples for testing, BYRNS, JAMES PORTER, JR., and other co-conspirators entered into arrangements with marketers to obtain urine samples from substance abuse treatment centers, sober living homes, physicians' offices, and other sources throughout the United States, and caused these marketers to be paid a portion of the insurance reimbursements. Urine drug tests were conducted on individuals from around the United States who required regular drug testing, such as persons undergoing treatment for substance abuse or taking prescription opioids. Many of the urine drug tests were medically unnecessary, for example, patients were tested too frequently for the results to be useful in a course of treatment, and expensive definitive tests (to determine the quantity or concentration of substances in the body) were conducted on numerous samples when only a screening test (to determine only the presence or absence of substances) would have been sufficient.

Defendant's Initials _____                    6

In September 2016, HLP and Pinnacle entered into a "Reference Laboratory Services Agreement" under which Pinnacle purportedly would provide "overflow" laboratory services for patient specimens at hospitals where HLP operated the clinical laboratory, and Putnam would bill claims to insurers. This agreement, signed by JAMES PORTER, JR. on behalf of both contracting parties, was based on the false notion that the Pinnacle would serve as a reference laboratory for patient specimens submitted by physicians in the first instance to Putnam. In fact, the contract masked that: (1) Putnam had no patients (in-patients or out-patients) who actually provided the specimens; (2) the physicians who ordered the testing had no connection with Putnam and did not order testing of any kind from Putnam; and (3) Putnam had no "overflow" testing to be performed by a reference lab. Putnam entered into a similar contract with Lifebrite Labs under which Lifebrite purportedly would assist Putnam in the performance of initial screening and definitive urine drug tests. This contract likewise masked the fact that no samples were submitted to Putnam in the first instance and Putnam had no need to reference testing to Lifebrite for either screening or definitive tests. In truth and in fact, physicians who ordered urine drug tests for patients of sober living homes, drug treatment centers, and medical offices throughout the country ordered those tests from Pinnacle and LifeBrite, which Pinnacle and LifeBrite

Defendant's Initials _____        7

had the full capacity to perform and did perform.

From the time DAVID BYRNS and JORGE PEREZ obtained control over Putnam until at least February 10, 2017, Putnam lacked laboratory facilities and equipment capable of performing either screening or definitive urine drug tests; thus, all such tests billed through Putnam during that time period had been performed at Pinnacle, Lifebrite, or another independent laboratory. BYRNS, JORGE PEREZ, JAMES PORTER, JR., and others caused claims for reimbursement of the urine drug tests to be submitted to the Private Insurers using Putnam's billing credentials, as if the testing had been performed at Putnam and the patients had some legitimate connection to Putnam, when neither were true. These claims were submitted to the Private Insurers in order to take advantage of Putnam's in-network status and higher reimbursement rates.

BYRNS, JORGE PEREZ, JAMES PORTER, JR., and others endeavored to open a testing laboratory at Putnam to conduct urine drug tests onsite. However, when the lab began operating in mid-February 2017, it had limited capacity. After that time, JAMES PORTER, JR. and his co-conspirators continued to bill urine drug tests through Putnam that had been performed at Pinnacle and Lifebrite. Physicians continued to refer testing to Pinnacle and Lifebrite, notwithstanding "co-branded" requisition forms that

Defendant's Initials _____          8

purported to indicate that testing was being referred to Putnam.

**Submission of Fraudulent Claims**

Once the urine drug tests were completed at Pinnacle Labs and LifeBrite Labs, JORGE PEREZ, RICARDO PEREZ, JAMES PORTER, JR., FLETCHER, BYRNS, and other co-conspirators, via Empower, caused claims for reimbursement to be submitted to the Private Insurers and other insurers under Putnam's NPI number and TIN, as if Putnam had performed the testing and the claims were reimbursable under the in-network contracts.

In causing these claims to be submitted through Putnam, JAMES PORTER, JR. and his co-conspirators caused false representations that (1) the testing was medically necessary, and (2) the testing was conducted at Putnam and was therefore reimbursable under the insurance contracts. Moreover, the claims concealed the fact that Pinnacle and LifeBrite conducted all urine drug testing prior to mid-February 2017, and most of the testing after that. As such, the claims contained materially fraudulent representations and omissions about the nature of the testing in order to obtain reimbursement under Putnam's contracted rates with insurance companies.

**Payment of Claims**

Based on these materially false and fraudulent representations and omissions, between in or about November 2016 and in or about February

Defendant's Initials                     9

insurance companies

2018, reimbursed Putnam approximately $114 million (which includes approximately $79 million for definitive urine drug testing), the significant majority of which was medically unnecessary.

JORGE PEREZ, JAMES PORTER, JR., and BYRNS caused approximately $59,915,841.72 of these insurance reimbursements to be transferred from Putnam to HLP, of which HLP transferred approximately $33.7 million to LifeBrite and approximately $12.2 million to Pinnacle.

Defendant's Initials _____   10